UNITED STATES *v.* READING COMPANY.

READING COMPANY *v.* UNITED STATES.

UNITED STATES *v.* SOUTHERN RAILWAY
COMPANY.

UNITED STATES *v.* ST. LOUIS, BROWNSVILLE &
MEXICO RAILWAY COMPANY.

UNITED STATES *v.* NEW YORK, NEW HAVEN &
HARTFORD RAILROAD COMPANY.

UNITED STATES *v.* CENTRAL NEW ENGLAND
RAILWAY COMPANY.

UNITED STATES *v.* NEW ENGLAND STEAMSHIP
COMPANY.

UNITED STATES *v.* BALTIMORE & OHIO RAIL-
ROAD COMPANY. (2 cases.)

PERE MARQUETTE RAILWAY COMPANY *v.*
UNITED STATES.

APPEALS FROM THE COURT OF CLAIMS.

Nos. 401, 402, 403, 404, 398, 399, 400, 499, 500, 36. Argued December
3, 1925.—Decided March 1, 1926.

1. Where amounts earned by military transportation before federal
control were paid, either to the respective railroads entitled or to
the Director General of Railroads, (who, on taking over their

properties, assumed the administration of their existing credits and liabilities, and kept accounts of them, as matters distinct from those arising during federal control;) and where, subsequently to such payments, the claims paid were in part disallowed, through error, by the government accounting officials, and the amounts disallowed were collected by them from the Director General by deductions from Railroad Administration bills for transportation during federal control, and were in turn charged by him against the respective carriers,—*held* that final settlements made, upon the return of the railroad properties, between the respective carriers and the Director General, acting for the United States, based upon accounts showing the above mentioned charges, and covering all demands " as between the parties hereto, growing out of the federal control of railroads," were not intended, and did not operate, to release the United States from liability to the carriers for the amounts so erroneously collected. Pp. 327, 330, 331, 332, 333, 336, 337.

2. A railway company which, in error but without protest, accepts payment of bills for government transportation at reduced, ' land-grant,' rates, can not maintain a suit in the Court of Claims for the difference between the amounts paid and the larger amounts to which it was entitled. P. 330.

60 Ct. Cls. 131, *et seq.* affirmed, as to all cases, except No. 36, reversed.

APPEALS from judgments of the Court of Claims in suits to recover amounts due the plaintiffs for transportation service to the Government.

*Mr. J. Harry Covington,* with whom *Messrs. Spencer Gordon, Alexander Britton,* and *Lawrence H. Cake* were on the briefs, for the appellant in No. 36 and the appellees in Nos. 403 and 404.

*Mr. L. T. Michener,* with whom *Messrs. William L. Kinter* and *F. Carter Pope* were on the brief, for the appellee in No. 401 and the appellant in No. 402, submitted.

*Mr. Benjamin D. Winner,* for the appellees in Nos. 398, 399, and 400.

*Mr. John F. McCarron,* with whom *Mr. George E. Hamilton* was on the brief, for the appellees in Nos. 499 and 500.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Solicitor General Mitchell* was on the briefs, for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

## No. 401.

The United States appeals from a judgment against it for $14,236.04. December 3, 1920, the Philadelphia & Reading Railway Company, to which plaintiff, the Reading Company, is successor, brought this action to recover its charges for transportation of troops and military impedimenta by that company and connecting carriers prior to federal control of railroads. When the railroads were taken over, the United States owed the company $24,900.01 for that transportation.

Federal control of railroads commenced December 28, 1917, and ended March 1, 1920. Pursuant to the Federal Control Act, approved March 21, 1918, c. 25, 40 Stat. 451, the Director General, February 18, 1920, entered into the standard form contract with the Philadelphia & Reading and its affiliated companies. It was agreed that the President took the company's accounts receivable as of midnight, December 31, 1917; that all amounts collected by the Director General on account of receivables should be credited by him to the company; that he was authorized, to the extent of cash realized upon the company's assets then on hand, to pay and charge to the company expenses growing out of operation prior to federal control, including reparation claims; that, unless objected to by the company, he might pay and charge to the company expenses and claims in excess of the cash so realized, and that, at the end of federal control, the Director General should return to the company all uncollected accounts.

Prior to June 14, 1918, there was paid by the disbursing officer of the army to the Director General, $26,157.20 on account of the bills for transportation before federal control.  February 18, 1920, the auditor of the War Department deducted $1257.19—as to which there is no controversy—from the Director General's bills for transportation during federal control, and the latter reimbursed himself by deducting that amount from the $26,157.20 paid him by the disbursing officer, leaving in his hands, a balance of $24,900.01.

June 18, 1918, the Comptroller ruled (24 Comp. Dec. 774) that, for each twenty-five officers and enlisted men traveling, the United States was entitled to a free car for the transportation of camp equipment and property.  But that decision was erroneous; and it was so held, June 13, 1921.  *Missouri Pacific R. R. Co.* v. *United States,* 56 Ct. Cls. 341, 348.

At different times in 1920, prior to July 16, the auditor of the War Department, in order to adjust payments to the basis of the Comptroller's ruling, disallowed as overpayments items aggregating $14,236.04 of the amount paid by the disbursing officer to the Director General, and took that amount from pending Railroad Administration bills for transportation during federal control.  The Director General deducted the same amount from the $24,900.01 remaining in his hands, leaving a balance of only $10,663.97 which was credited to the company in the account "Assets, December 31, 1917, collected."  February 24, 1920, the Director General promulgated General Order No. 66, providing for accounting incident to the termination of federal control.  This order (§ 5a) directed that, where there were paid out of federal funds overcharge freight claims in respect of traffic, the revenues from which were included in corporate revenue, the amounts should be charged on the federal books to the corporation in the account " Corporate transactions," and

on the corporate books such amounts should be charged to an appropriate suspense account and credited to the United States in a corresponding account. This required the amount of the deduction, $14,236.04, so to be charged and credited.

August 25, 1920, the War Department paid the Railroad Administration a large sum in full settlement for all transportation during federal control. Thereupon, the Director General issued accounting circular 152, which announced the settlement, and stated: " Special attention is directed to the fact that the settlement above referred to involves the War Department only; . . . and does not include bills rendered in the Federal accounts for transportation service performed prior to Federal control," and directed that unpaid bills for such transportation " shall not be closed into the account 'War Department transportation charges,' but instead shall be charged to the corporation through the account '(Name of corporation)—Corporate transactions '."

The Court of Claims found that, " The final account of the final settlement between the Director General of Railroads and the plaintiff reads as follows: ' United States Railroad Administration, Director General of Railroads.— Comparison of claim submitted by the Philadelphia & Reading Railway Co. . . . with books of the central administration adjusted to March 31, 1922 '." The statement is printed in the margin.* The two accounts in-

*

| | Corporation claims as of Mar. 31, 1922 | Administration books as of Mar. 31, 1922 | Difference |
|---|---|---|---|
| **DUE TO CORPORATION** | | | |
| Compensation | $36, 861, 152. 00 | $36, 814, 668. 84 | $46, 483. 16 |
| Less advances, loans, etc | 23, 515, 000. 00 | 23, 515, 000. 00 | |
| | 13, 346, 152. 00 | 13, 299, 668. 84 | 46, 483. 16 |
| Rental interest on completed | 421, 260. 54 | 421, 260. 54 | |
| | 13, 767, 412. 54 | 13, 720, 928. 38 | 46, 483. 16 |

volved are "Assets, Dec. 31, 1917, collected," in which
only $10,663.97 of the amount received by the Director
General for company transportation before federal control
was credited to the company, and "Corporate transac-
tions," in which the deductions making up the balance,
$14,236.04, were charged to the company. The final
account of the final settlement shows that the claims of
the corporation and the administration books were iden-
tical in respect of these accounts.

The final settlement agreement is set forth in the find-
ings. So far as material, it is as follows:

"This agreement, entered into this 30th day of June,
A. D. 1922, by and between James C. Davis, Director

*—Continued.

|  | Corporation claims as of Mar. 31, 1922 | Administra- tion books as of Mar. 31, 1922 | Difference |
|---|---|---|---|
| OPEN ACCOUNTS DUE TO CORPORATION |  |  |  |
| Cash on hand, Dec. 31, 1917 | $3,751,989.43 | $3,751,989.43 |  |
| Agent's and conductor's balance, Dec. 31, 1917 | 5,741,370.49 | 5,741,370.49 |  |
| Assets, Dec. 31, 1917, collected | 4,959,283.87 | 4,959,283.87 |  |
| Total | 14,452,643.79 | 14,452,643.79 |  |
| OPEN ACCOUNTS DUE FROM CORPORATION |  |  |  |
| Liabilities, Dec. 31, 1917, paid | 13,543,371.73 | 13,543,371.73 |  |
| Corporate transactions | 3,195,291.81 | 3,195,291.81 |  |
| Expense prior to Jan. 1, 1918 | 2,301,240.96 | 2,301,240.96 |  |
| Revenue prior to Jan. 1, 1918 | 523,946.05 | 523,946.05 |  |
| Total | 19,563,850.55 | 19,563,850.55 |  |
| Balance due from corporation on open accounts | 5,111,206.76 | 5,111,206.76 |  |
| Balance due to corporation | 8,656,205.78 | 8,609,722.62 | $46,483.16 |
| OTHER ITEMS DUE TO CORPORATION |  |  |  |
| Material and supplies | 4,468,333.00 | 1,188,287.23 | 3,280,045.77 |
| Equipment retired—Normal | 1,983,888.05 | 1,925,887.31 | 58,000.74 |
| Road property retired and not replaced—Normal | 233,331.36 | 63,653.95 | 169,677.41 |
| Road property retired and not replaced—Fire | 13,846.00 | 11,108.12 | 2,737.88 |
| Road property retired and replaced | 654,723.04 |  | 654,723.04 |
| Preliminary surveys—Projects abandoned | 10,405.54 | 10,405.54 |  |
| Total | 7,364,526.99 | 3,199,342.15 | 4,165,184.84 |

General of Railroads and agent of the President, acting on behalf of the United States and the President, hereinafter called the 'director general,' and the Philadelphia and Reading Railway Company [and here are given the names of affiliated companies], hereinafter called the 'companies,' witnesseth:

"The said director general hereby acknowledges payment of the sum of eight million dollars ($8,000,000.00) by the said companies, the receipt whereof is hereby acknowledged, in full satisfaction and discharge of all claims, rights, and demands, of every kind and character,

*—Continued.

| | Corporation claims as of Mar. 31, 1922 | Administration books as of Mar. 31, 1922 | Difference |
|---|---|---|---|
| **27    OTHER ITEMS DUE FROM CORPORATION** | | | |
| Additions and betterments | $13,768,317.83 | $13,768,317.83 | |
| Salvage from A. & B. for war purposes | 4,932.43 | 4,932.43 | |
| Office furniture | 16,985.24 | 16,985.24 | |
| Interest other than rental | 446,002.06 | 336,655.93 | $109,346.13 |
| Allocated equipment account | 12,747,077.42 | 12,747,077.42 | |
| Adjustments subsequent to March, 1922 | 4,141.22 | 4,141.22 | |
| Interest on subsequent adjustments | 465.84 | 465.84 | |
| Adjustments unapproved by corporation | | 5,905.46 | 5,905.46 |
| Interest on unapproved adjustments | | 664.29 | 664.29 |
|     Total | 26,987,922.04 | 26,885,145.66 | 102,776.38 |
| Balance due from corporation on other items | 19,623,395.05 | 23,685,803.51 | 4,062,408.46 |
| Balance due from corporation | 19,967,189.27 | 15,076,080.89 | 4,108,891.62 |
| **DEPRECIATION OBLIGATION** | | | |
| Equipment | 3,866,526.91 | 3,777,229.00 | 89,297.91 |
| Balance due from corporation | 7,100,662.36 | 11,298,851.89 | 4,198,189.53 |
| **MAINTENANCE** | | | |
| Way and structures—Under | 2,609,552.71 | 2,321,411.00 | 288,141.71 |
| Equipment—Under | 611,689.21 | 977,440.89 | 365,751.68 |
| Balance due to corporation on maintenance | 3,221,241.92 | 3,298,851.89 | 77,609.97 |
| Net balance due from corporation | 3,879,420.44 | 8,000,000.00 | 4,120,579.56 |

which the said director general, or any one representing
or claiming to represent the director general, the United
States, or the President, now has or hereafter may have
or claim against the said companies, or any of them,
growing out of or connected with the possession, use, and
operation of the companies' property by the United States
during the period of Federal control, or out of the contract
between the parties dated the 18th day of February, 1920;
and the said companies, both jointly and severally, hereby
acknowledge the return to and receipt by them of all their
property and rights which they are entitled to, and fur-
ther acknowledge that the director general has fully and
completely complied with and satisfied all obligations on
his part, or on the part of the United States, or the United
States Railroad Administration, growing out of Federal
control."

" The purpose and effect of this instrument is to evi-
dence a complete and final settlement of all demands, of
every kind and character, as between the parties hereto,
growing out of the Federal control of railroads, save and
except that the following matters are not included in this
adjustment and are not affected thereby. . . . [The
exceptions specified do not include the claim in suit.]"

The United States contends that payment by the War
Department of the company's bills to the Director Gen-
eral charged him with liability for the money, and that,
when he paid part to the company, and the latter exe-
cuted the contract in final settlement of all demands of
every kind and character growing out of federal control,
the United States was released from the remainder.

By this instrument, the company acknowledged that
the Director General had returned to it all its property
and rights and had satisfied all obligations on his part or
on the part of the United States or the Railroad Adminis-
tration " growing out of Federal control "; and it declared
that the purpose of the agreement was to evidence a final

settlement of all demands "as between the parties hereto, growing out of the Federal control of railroads." The United States relies on the phrase "growing out of Federal control" to show that plaintiff's claim was an obligation or demand included in the settlement. The phrase is general and, if considered independently of context and the transactions which led up to the agreement, its meaning would be too indefinite and vague to have any significance. The surrounding circumstances must be considered. *Reed* v. *Insurance Company,* 95 U. S. 23, 30. The President, as a war measure, took possession and the use of the transportation systems of the country. The taking was temporary. The Federal Control Act authorized agreements in respect of compensation for the use of the property. The Transportation Act of 1920, § 202, c. 91, 41 Stat. 456, 459, directed that, as soon as practicable after the termination of federal control, the President should settle and wind up all matters "arising out of or incident to Federal control." A Director General was appointed and a Railroad Administration was created to unify control of all the properties for the more efficient transportation of troops and war materials. All control was taken out of the hands of the companies; but the Director General made use of their former organizations, officials and employees. When the transfer of control was made, it was convenient for all concerned—if not indeed necessary—that freight bills then remaining unpaid should be handled by the persons in charge of the operating properties. There was no expropriation of the companies' accounts receivable for transportation before federal control. They did not become the property of the United States. Amounts collected or paid out by the Director General on account of assets or liabilities of the companies existing or arising before federal control were dealt with separately and respectively credited and charged to the companies. In making such collections

and disbursements, the Director General acted in respect of the affairs of the company which were wholly distinct from transactions arising from operation during federal control.

The War Department made use of Railroad Administration bills to retake the supposed overcharges. The effect was the same as if $14,236.04 had been deducted before payment directly from the company's bills. Assuming that he had the power, the Director General did not undertake to settle questions between the War Department and the company in respect of freight bills for transportation before federal control. Accounting Circular 152 shows that the Railroad Administration did not attempt to secure the release of the War Department from liability for the unpaid balance owing on company bills. The Director General's charge of $14,236.04 against the company in the corporate transactions account was the same as if the company had paid the amount in cash to the Railroad Administration to make it whole in respect of its efforts to collect the company's bills. So far as the book entries are concerned, the company retained its claim for transportation against the United States; and plaintiff is entitled to recover unless the Philadelphia & Reading gave up its claim by the final settlement agreement.

But the Government contends that "the final account of the final settlement" cannot be considered, and argues that it purports only to adjust claims to March 31, 1922, while the "final settlement" agreement was made June 30, 1922; that these documents have no relation to each other, and that the account deals only with details, whereas the contract of settlement embraces all demands, whether included in the account or not. These contentions are not sustained. The findings of fact must be accepted. The court found that: "The final account of the final settlement . . . reads as follows;" this is

unequivocal; the meaning is plain, and there is no room
for exposition. The only sum included for the company's
transportation before federal control is $10,663.97. The
amount retaken, $14,236.04, was charged to the company.
In final settlement, the company paid $8,000,000, the
exact sum stated in the final account.

Obviously, the transportation for which claim is made,
and the auditor's ruling that the disbursing officer made
overpayment, did not grow out of federal control. And,
if collection of company bills by the Director General
otherwise might be deemed to have been incident to fed-
eral control, the book entries and the final account show
that the balance owing for the transportation in question
belonged to the company. By the standard form of con-
tract, the Director General was bound, at the termination
of federal control, to return to the company all uncollected
accounts. This action was pending more than a year and
a half when the settlement was made. If the parties
intended to settle the claim sued on, a dismissal of the
action by consent should have followed. The transactions
out of which the Auditor's erroneous deductions grew
did not concern the Railroad Administration; and, in
respect of them, there never was any question between it
and the company. Plaintiff's claim was in no sense an
obligation or demand against the Railroad Administration
or the United States in respect of the federal control of
railroads. The facts make it clear that the final agree-
ment did not release the United States from liability for
the freight charges in question.

No. 402.

This is the Reading Company's cross appeal. On the
findings, it claims judgment for $6,990.92 additional.
Certain bills prepared by the company were based on
Class A rates on military impedimenta. These bills were
restated by the company without protest on the basis of

Class D rates with land grant deductions. The restated bills were paid. Certain other bills for like transportation were originally stated on the basis of Class D rates with land grant deductions and were paid. And other bills for similar service were withdrawn and restated for lesser sums; the amounts so claimed were paid. The facts found by the Court of Claims are not sufficient to justify any recovery, and bring the case presented on cross appeal within the ruling in *Oregon-Washington R. R. Co.* v. *United States,* 255 U. S. 339, 345; *Louisville & Nashville R. R.* v. *United States,* 267 U. S. 395, 401; *C., M. & St. P. Ry.* v. *United States,* 267 U. S. 403. The cross appeal is without merit.

## No. 403.

The United States appeals from a judgment against it for $48,439.68. This case is similar to No. 401. In 1916 and 1917, plaintiff, Southern Railway Company, transported military impedimenta for the United States, and presented its bills therefor. The disbursing officer of the army paid some of them to plaintiff in 1917; and, after the plaintiff's railroad was taken over, paid others to the Director General. These amounts were credited on federal books to plaintiff as "revenue prior to January 1, 1918." The Auditor of the War Department, following a ruling made by the Comptroller, June 18, 1918, held that the disbursing officer had made overpayments on account of these bills amounting to $48,439.68; and, to recover the supposed overpayments, deductions were made at different times from the bills of the Railroad Administration for transportation during federal control. Then the Director General charged the amount of these deductions to plaintiff in an account designated "Corporate transactions"; and they were credited to the Railroad Administration on the books of plaintiff in a corresponding account.

The auditor's finding that overpayments were made was erroneous. Plaintiff was entitled to the amounts paid by the disbursing officer. The Government's sole contention is that the final settlement in respect of matters growing out of federal control, operated to discharge the claim sued on. The Court of Claims incorporated in its findings the final account of the final settlement between the Director General and the plaintiff. Its form is substantially the same as that set out in the margin in No. 401. At the top of the statement, there is this notation, "[Final settlement contract, June 22, 1921]." The amount admitted by the plaintiff to be due the Railroad Administration on the account "Corporate transactions" was less than the amount claimed by the Railroad Administration. But the Court of Claims expressly found that prior to the settlement the parties agreed upon the smaller amount, and that there was no compromise of the amount charged against the plaintiff in "Corporate transactions"; that the full amount charged by the Railroad Administration was paid by the plaintiff, and included therein was the sum of $48,439.68, deducted from Railroad Administration bills on account of supposed overpayments of plaintiff's bills. The final settlement agreement was made June 22, 1921. It is in the same form and, so far as concerns the matters here in controversy, has the same force and effect as that quoted in No. 401. That decision controls this case:

### No. 404.

The United States appeals from a judgment for $15,143.91. This case is similar to Nos. 401 and 403. In 1916 and 1917 plaintiff, the St. Louis, Brownsville & Mexico Railway Company, and connecting carriers, transported military impedimenta for the United States, and plaintiff presented bills therefor. The disbursing officer of the army paid some of them to plaintiff in 1917. When auditing the disbursing officer's account, the

Auditor of the War Department erroneously disallowed payments made by him; and, pending settlement of the account, the company's railroad was taken over by the President. In order to recover the supposed overpayments, the auditor deducted $15,143.91 from bills of the Railroad Administration for transportation during federal control, $13,035.97 during federal control, and the balance later. The Railroad Administration charged the amount deducted against plaintiff in the account "Corporate transactions" in accordance with General Order No. 66, and that amount was credited to the Railroad Administration and charged against the War Department on the plaintiff's books. There was a final settlement agreement between the Director General and the plaintiff dated July 29, 1921. The final account of settlement was made as of May 31, 1921. It consisted of a comparison of claims submitted by the plaintiff with the books of the central administration adjusted to that date. The court expressly found that there was no dispute as to the amount due from plaintiff to the Railroad Administration on the account "Corporate transactions," and that the same was paid in full in the final settlement. Included in the amount was the sum of $15,143.91 deducted from Railroad Administration bills on account of supposed overpayments. The final account relates to the settlement agreement. The agreement shows that the Director General paid the company the exact amount shown by the final account to be due the corporation according to the Administration books. The agreement is in the same form and, so far as concerns the matters herein controversy, has the same force and effect, as that quoted in No. 401. That decision controls in this case.

### No. 398, No. 399, No. 400.

In No. 398, the United States appeals from a judgment against it for $12,176.00. The amount here in contro-

versy is $9,160.89. In 1916 and 1917 plaintiff, the New Haven, and connecting carriers transported certain military impedimenta on government bills of lading; and plaintiff, as last carrier, presented its bills therefor. Plaintiff's transportation system was taken over by the President, December 28, 1917. The disbursing officer of the army paid some of these bills to plaintiff before, and some to the Railroad Administration after, the railroads were taken over. In auditing the accounts of the disbursing officer, the Auditor of the War Department, following the erroneous ruling of the Comptroller (24 Comp. Dec. 774) disallowed as overpayments $9,160.89 of the amount paid on these bills. The plaintiff refused to refund. Then, in order to recover the supposed overpayments, the auditor deducted from the bills of the Railroad Administration presented to the disbursing officer, $7,295.54 during, and $1,865.35 after, federal control. The total was charged on the books of the Railroad Administration to the plaintiff. General Order No. 68 created a trustee account to take effect at the termination of federal control, midnight February 29, 1920. By this order, railroads that had been under federal control were made trustees of the Railroad Administration to collect its unpaid bills, to pay its liabilities, and generally to wind up its unfinished business. The cash pertaining to the transportation business was turned over to the railroads to be carried to that account; and money erroneously paid into the trustee account by deposit could be withdrawn by the consent of the Director General. In January, 1921, plaintiff paid into the trustee account $9,160.89 to make good to the Railroad Administration the deductions erroneously made by the Auditor of the War Department; and on its own books plaintiff charged that amount to the War Department. March 21, 1922, this action was commenced.

October 26, 1923, there was a final settlement between the plaintiff and the Director General consisting of a final

account and agreement. The form of the account is similar to that printed in the margin in No. 401. And that agreement, so far as concerns the Government's insistence that plaintiff released the claim in suit, contains the same language as that quoted and discussed in No. 401; and in this case the agreement contains an exception: "This settlement does not include or affect any moneys or assets of the Director General turned over to the company pursuant to General Order No. 68, the account created by this order to be adjusted as though this agreement had not been made."

There was no overpayment on account of plaintiff's bills. Plaintiff was entitled to the amount paid by the disbursing officer, and rightly refused to refund. The effect of the auditor's deductions was to compel the Railroad Administration to refund for account of plantiff the amount of the supposed overpayments. The amount so refunded was rightly charged to plaintiff, and was repaid by deposit in the trustee account. The agreement expressly excluded that account and left it to be adjusted as if no settlement had been made. The transaction out of which the auditor's deductions arose did not concern the Railroad Administration; and, in respect of that matter, there never was any question or dispute between it and plaintiff. The matter in controversy was wholly between the War Department and plaintiff. The effect of the exception quoted was to exclude plaintiff's claim from the settlement; and to leave the plaintiff free to continue to prosecute this action to recover the amount erroneously deducted as overpayments on plaintiff's bills. And plaintiff's claim was in no sense an obligation or a demand against the United States in respect of the federal control of railroads.

No. 399 and No. 400 are controlled by our decision in this case.

No. 499 AND No. 500.

No. 499 is an appeal by the United States from a judgment against it for $18,796.68. The amount here involved is $16,588.13. The transportation system of plaintiff, the Baltimore & Ohio Railroad Company, was taken over by the President December 28, 1917; and federal control continued until March 1, 1920. In 1916 and 1917, plaintiff and connecting carriers transported troops upon government transportation requests. Plaintiff, as initial carrier, presented bills therefor based on net per capita fares obtained by combinations only on the western gateways specified in the interterritorial military arrangements of 1916 and 1917. Payments amounting to $289,-774.89 were made by the proper disbursing officer. Some of these payments, $172,210.31, were made to plaintiff before federal control. The balance were made during federal control to the Director General, and were credited to plaintiff. The Auditor of the War Department, in auditing the accounts of the disbursing officer, disallowed as overpayments on account of these bills, $20,978.45; and, at different times from March 12 to September 17, 1920, deducted from bills of the Railroad Administration the amount of the supposed overpayments. These deductions, to the amount of $16,588.13, were obtained by routing not authorized by the interterritorial military arrangements. The disallowances were held erroneous on the authority of *Atchison &c. Ry.* v. *United States,* 256 U. S. 205. The Government does not support them. The Court of Claims held that deductions made by the auditor amounting to $4,390.32 were proper; and, as no cross appeal was taken, they are not here involved.

Of the total amount deducted, plaintiff refunded $13.58 to the War Department; and the Railroad Administration charged back to plaintiff $20,939.52 through the account "Federal assets collected," and $25.35 through the account "Corporate transactions."

In December, 1921, the plaintiff paid into the trustee account, created in accordance with General Order No. 68, to the credit of the Administration, $20,939.52, and charged that amount against the War Department.

July 27, 1922, there was a final settlement between the Director General and the plaintiff. That agreement, so far as concerns the Government's insistence that plaintiff released the claim in suit, contains the same language as that quoted in No. 401. The agreement also contains an exception in the same language, and having the same force and effect, as that quoted in No. 398. Our decisions in those cases are controlling here.

No. 500 is also controlled by them.

### No. 36.

This is an appeal by the plaintiff, the Pere Marquette, from a judgment that it is not entitled to recover. In 1917, plaintiff transported military impedimenta on Government bills of lading, and presented its bill, based on lawfully published tariffs less land grant deductions, amounting to $3,828.08. The disbursing officer paid that amount to plaintiff. Subsequently, the Auditor of the War Department, following a decision of the Comptroller, erroneously disallowed the full amount. The plaintiff's railroad was then under federal control, and the auditor deducted an equal amount from sums due the Railroad Administration for transportation in October and November, 1918. The Government does not support the auditor's disallowance of plaintiff's claim or the deduction of an equivalent amount from the Railroad Administration.

July, 1920, in an adjustment of accounts between plaintiff and the Railroad Administration, the amount in question was credited by plaintiff to the Railroad Administration; and it remains outstanding on plaintiff's books as an unpaid balance on its bill, paid, but afterwards disallowed by the auditor. November 12, 1921, a final settlement

was made between the plaintiff and the Railroad Administration. The contract contains the same general language in respect of the purpose of the instrument as that considered in our decision in No. 401.

This action was commenced, September 2, 1921, and on December 10, 1923, the Court of Claims gave judgment, citing *Louisville & Nashville R. R.* v. *United States,* and *Philadelphia & Reading R. R.* v. *United States,* decided in that court, November 5, 1923. But in the *Louisville & Nashville Case* the judgment was vacated; and, on rehearing, a judgment was entered in favor of the company, April 26, 1925. After the appeal in the case at bar, new trials were granted by the Court of Claims in other similar cases, which had been decided for the United States, and, January 5, 1925, judgment was entered for plaintiff in each. Appeals were taken by the United States; motions to advance were granted. This case and the others decided with it were argued and submitted at the same time.

The Government contends that there is no finding that plaintiff repaid the Railroad Administration the amount erroneously deducted by the auditor; that the book entries are not sufficient evidence of repayment, and that it was the intention of the settlement agreement to include this claim as one growing out of federal control. But the finding is that plaintiff gave appropriate credit to the Railroad Administration, and that plaintiff's books show its bill has not been paid. General Order No. 66, General Order No. 68, and Accounting Circular 152 were promulgated by the Railroad Administration for general application. It is to be presumed that the rules there laid down were followed; that the amount in question was charged back to plaintiff on the federal books, and that settlement was made on that basis. Moreover, if it had been the intention of the settlement agreement to include this claim as one growing out of federal control, a consent

dismissal of this action, then pending, should have followed. Our decision in No. 401 controls this case.

*Judgments in Nos. 401, 402, 403, 404, 398, 399, 400, 499 and 500 affirmed.*

*Judgment in No. 36 reversed.*

MR. JUSTICE HOLMES took no part in the consideration of these cases.